## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | :    3:20-cr-00122 |
| | :    (JUDGE MARIANI) |
| v. | : |
| | : |
| JAKOB GUCU | : |
| | : |
| Defendant. | : |

### MEMORANDUM OPINION

### I.    INTRODUCTION & PROCEDURAL HISTORY

Pending before the Court is Defendant Jakob Gucu's *pro se* petition to correct, set aside, or vacate his sentence pursuant to 28 U.S.C. § 2255. (Doc. 59). For the reasons set forth below, the Court will deny Defendant's habeas petition without an evidentiary hearing and a certificate of appealability will not issue.

On June 16, 2020, a grand jury returned an indictment charging Defendant with one count Conspiracy to Distribute a Controlled Substance, in violation of 21 U.S.C. § 846, four counts of Distribution of a Controlled Substance in violation of 21 U.S.C. § 841(a)(1), and one count of Possession of Firearm in Furtherance of Drug Trafficking in violation of 18 U.S.C. § 924(c). (Doc. 1). The Court accepted Defendant's plea at a change of plea hearing on April 5, 2021. (Docs. 66). On January 12, 2023, the Court held a sentencing hearing and sentenced Defendant to a term of imprisonment of 97 months. (Docs. 57, 68).

On September 14, 2023, Defendant filed a pro se petition to correct, vacate, or set aside his sentence pursuant to 28 U.S.C. § 2255. (Doc. 59). On December 16, 2023, the Government filed a response, opposing the habeas petition. (Doc. 70). The parties have fully briefed the petition, and it is ripe for disposition.

## II.    STANDARD OF REVIEW

28 U.S.C. § 2255 provides, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255(a). "Section 2255 petitions are not substitutes for direct appeals and serve only to protect a defendant from a violation of the constitution or from a statutory defect so fundamental that a complete miscarriage of justice has occurred." *United States v. Cepero*, 224 F.3d 256, 267 (3d Cir. 2000), *abrogated on other grounds by Gonzales v. Thaler*, 55 U.S. 134 (2012)) (citing *Reed v. Farley*, 512 U.S. 339, 348 (1994). "Relief is available under Section 2255 only under exceptional circumstances, where the claimed errors of law are 'a fundamental defect which inherently results in a complete miscarriage of justice,' or "an omission inconsistent with the rudimentary demands of fair procedure.'" *United States v. Polonia*, 2020 WL 5260939, at *1 (M.D. Pa. Sept. 3, 2020) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

2

Section 2255 also directs that, in some instances, the court "shall" hold an

evidentiary hearing.

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of facts and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). In *United States v. Booth*, 432 F.3d 542 (3d Cir. 2005), the

Court of Appeals for the Third Circuit explained the court's discretion in these matters:

> Although a district court has discretion whether to order a hearing when a defendant brings a motion to vacate sentence pursuant to 28 U.S.C. § 2255, our caselaw has imposed limitations on the exercise of that discretion. In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). *See also* R. Governing § 2255 Cases R. 4(b). The District court is required to hold an evidentiary hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Id.* We have characterized this standard as creating a "reasonably low threshold for habeas petitioners to meet." *McCoy*, 410 F.3d at 134 (quoting *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001)). Thus, the district court abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief. *Id.* at 131, 134 ("If [the] petition allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing.").

432 F.3d 545-46. As a general rule, the petitioner has the burden of proof in § 2255

proceedings. *United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977).

Ineffective assistance of counsel claims are properly raised on collateral review

rather than on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To

succeed on an ineffective of counsel claim, a petitioner must satisfy the two-part test set out

in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The *Strickland* test has two prongs: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense." *Palmer v. Hendricks*, 592 F.3d 386, 394 (3d Cir. 2010) (citing *Strickland*, 466 U.S. at 687). "The first prong requires a petitioner to demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* (internal citation and quotation marks omitted). "*Strickland's* second prong requires a petitioner to show that the errors were 'sufficiently serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687). "The petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different." *Id.* (internal citation and quotation marks omitted). The petitioner bears the burden of establishing that counsel's performance prejudiced the defense. *Marshall v. Hendricks*, 307 F.3d 36, 89 (3d Cir. 2002).

## III.   ANALYSIS

In his Section 2255 petition, Defendant raises three distinct claims for relief. First, Defendant claims that his counsel promised him a specific sentence that was not imposed. (Doc. 59 at 1). Second, Defendant claims his counsel was ineffective for failure to argue for the Defendant's acceptance of responsibility. (*Id.*, at 2). Third, Defendant clams his counsel was ineffective for failing to argue for a minor or minimal role reduction at sentencing. (*Id.*). The Court will address each claim in turn.

A.    **Defendant Claims Counsel Promised a Specific Sentence Not Imposed.**

The Defendant claims that when he arrived for his guilty plea hearing, his counsel advised him that he would receive a sentence of "no more than 36 to 48 months." (Doc. 59, at 1). However, this claim is flatly refuted by the plea agreement, (Doc. 32), and Defendant's admissions and acknowledgments while under oath at his change of plea hearing and accordingly will be denied. At the change of plea hearing the following exchanges took place:

The Court: Mr. Gucu, I understand that, although you previously pled guilty [sic] in this case, it's your intention here today to change that plea and enter a plea of guilty. Before I can accept your guilty plea, I must determine you are competent to plead at this time, that you have had the assistance of counsel, that you understand your trial rights, if you were to plead not guilty and go to trial, that you understand the nature of the charges against you, that your plea is voluntary, and that there's a factual basis to support your plea. Now, to begin this process, I'm going to have you placed under oath, and I will ask you questions, as we go forward. Before I have you placed under oath, I want you to understand that you can consult with Mr. Brown at any time during this process, and I will stop the proceedings, at any time, to allow you to do so. Once you're sworn, of course, you must answer my questions truthfully. False answers to my questions could subject you to prosecution for perjury or false statement. And when you give me truthful answers to my questions, you'll be waiving, giving up your

right not to testify against yourself. And your answers to some of my questions will be incriminating, with respect to the charges against you. Lastly, for me to accept your plea, you will have to admit your guilt. So far, do you understand what I've told you?

The Defendant: Yes, Your Honor.

(Doc. 66 at 2:25-3:25). After the Court questioned Mr. Gucu regarding his competency to offer a plea, it then asked:

The Court: Mr. Brown, do you have any reservations as to Mr. Gucu's competence to offer a plea?

Mr. Brown: I do not, Your Honor.

The Court: Ms. Olshefski?

Ms. Olshefski: No, Your Honor.

The Court: All right. I'm going to talk to you about the assistance of counsel you've had. Mr. Brown is your attorney. How long has he represented you in this matter?

The Defendant: I didn't hear you, Your Honor.

The Court: I beg your pardon?

The Defendant: How long?

The Court: Yes.

The Defendant: Since June 19th of last year.

The Court: Have you had enough time to talk with Mr. Brown about this case?

The Defendant: Yes, Sir.

The Court:  In the course of speaking with him, have you told him everything you know about the case?

The Defendant:  Yes, sir.

The Court:  Are you satisfied with the advice he has given you?

The Defendant:  Yes, sir.

The Court:  Are you satisfied with his efforts on your behalf?

The Defendant:  Yes, sir.

The Court:  Now, do you understand, in this particular case, that you have been indicted by a Grand Jury?

The Defendant:  Correct.

The Court:  Have you seen the indictment?

The Defendant:  Yes.

The Court:  Have you read it or has it been read to you?

The Defendant:  Yes, sir.

The Court:  Do you understand that you have a right, if you wish, to have me read the indictment to you?  You can waive that right.  Do you wish to waive that right?

The Defendant:  Yes, you can waive it.

The Court:  Let me just, then, essentially, summarize, basically, Count 1 of the indictment so that it's clear.  You are charged with knowingly, intentionally and unlawfully conspiring with other unnamed persons to commit a specific offense, that

is, to knowingly, intentionally and unlawfully distribute and possess with intent to

distribute 50 grams or more methamphetamine. Do you understand that's what you're

charged with?

The Defendant: Yes, sir.

The Court: And Mr. Brown, without going into the facts of the case, have you given

your client an explanation of the charges against him?

Mr. Brown: I have, Your Honor.

(Doc. 66 at 5:17-7:15).

The Court continued, giving Defendant a detailed colloquy of his trial rights which

would be waived by his guilty plea and continued to question the defendant about his

understanding of the terms of the written plea agreement.

The Court: Now, I know there's a written plea agreement in this case. Mr. Brown, do

you have a copy of the document to show to your client?

Mr. Brown: I do, Your Honor. It's in front of him.

The Court: Mr. Gucu, if you would go to the last page of the document, please. It's

Page 33, I believe—32, excuse me. Do you have that, sir?

The Defendant: Yes.

The Court: You'll see under the word, Acknowledgments, there are two sentences

that read; "I have read this agreement and carefully reviewed every part of it with my

8

attorney.   I fully understand it and I voluntarily agree to it."   Do you see those sentences?

The Defendant:  Yes, sir.

The Court:  And then, beneath that, you'll see the typewritten name, Jakob Gucu, and a signature above the typewritten name.

The Defendant:  Yes, Your Honor.

The Court:  Whose signature is that?

The Defendant:  That is my signature.

The Court:  Before you put your name on this plea agreement, did you read it?

The Defendant:  Yes, Your Honor.

The Court:  Did you discuss it with your attorney?

The Defendant:  Yes, Your Honor.

The Court:  At that time, if you had questions, were they answered to your satisfaction by your attorney?

The Defendant:  Yes.

The Court:  Do you have questions here today?

The Defendant:  No, Your Honor.

The Court:   Now, just to make certain that you understand the terms of the plea agreement the same way that Government does, I'm going to have Mrs. Olshefski who represents the Government here summarize what the essential terms of the plea

agreement are. I would ask you to listen carefully to her, because when she's
concluded, I'm going to ask you whether the terms as she has explained them are the
terms as you understand them. Are you ready?

The Defendant: Yes, sir.

The Court: Ms. Olshefski, please.

(Doc. 66 at 10:13-12:4).

At this point in the change of plea hearing, counsel for the Government placed on the
record the essential terms of the Defendant's written plea agreement. These essentials
terms included, *inter alia*, the crime to which the Defendant was pleading guilty ("a violation
of Title 21 United States Code Section 846, which is Conspiracy to distribute and
possession with intent to distribute controlled substances"; the maximum penalties
association with the crime ("The maximum penalty for the offense is life imprisonment"); and
the mandatory minimum term of imprisonment associated with that crime ("but a mandatory-
minimum term of ten years imprisonment."). (Doc. 66 at 12:5-24). The Government again
highlighted the minimum term of imprisonment as an essential term of the plea agreement
with reference to Paragraph 2 of the plea agreement, "Count 1 carries a mandatory-
minimum period of imprisonment of ten years." (*Id.*, at 12:25-13:3).

Counsel for the Government also highlighted paragraph 25 of the plea agreement as
an essential term, "Paragraph 25 of the plea agreement evidences the Defendant's
understanding that the Court is not a party to and is not bound by this agreement or any

recommendations made by the parties. Thus, the Court is free to impose upon the Defendant any sentence up to and including the maximum sentence of life imprisonment, a fine of $10 million, a maximum term of supervised release of up to life, which shall be served at the conclusion of and in addition to any term of imprisonment, the costs of prosecution, denial of certain Federal benefits and an assessment totaling $100." (*Id.*, at 14:21-15:6). Counsel for the Government also specifically highlighted paragraph 26 of the plea agreement as an essential term. "Paragraph 26 refers to the fact that, if the Court imposes a sentence with which the Defendant is dissatisfied, the defendant will not be permitted to withdraw any guilty plea for that reason alone nor will the Defendant be permitted to withdraw any pleas, should the Court decline to follow any recommendation by any of the parties of this agreement." (*Id.*, at 15:7-12). Counsel for the Government also highlighted paragraph 31 of the plea agreement which "refers to an appellate waiver on direct appeal." (*Id.* at 15:20-16:2).

Following the Government's recitation of the essential terms of the plea agreement, the Court continued to confirm the Defendant's understanding and acceptance of those same terms.

The Court: Thank you, Ms. Olshefski. Mr. Gucu, did you listen to Ms. Olshefski outline the essential terms of the plea agreement?

The Defendant: Yes, I did.

The Court: Are the terms of the plea agreement, as outlined by Ms. Olshefski, the terms, sir, as you understand them?

The Defendant: Yes, sir.

The Court: Now, there are various recommendations that Ms. Olshefski made reference to in discussing the terms of the plea agreement. Do you understand that if I were not to accept any recommendation pertaining to a reduction in your offense level under the Sentencing Guidelines, you will still be bound by your plea, and you will not have the right to withdraw your plea on the ground that I did not accept those recommendations? Do you understand that?

The Defendant: Yes, Your Honor.

The Court: Do you understand that, as Ms. Olshefski already pointed out, I'm not a party to this agreement and not bound by its terms, and I'm free to impose any sentence up to and including the maximum allowed by law? You understand that?

The Defendant: Yes, Your Honor.

**The Court: Do you understand that if the sentence is more severe than you expected, you'll still be bound by your plea, and you will not have the right to withdraw your plea on the ground that you're dissatisfied with the plea—or with the sentence rather—or you consider the sentence too severe? Do you understand that?**

**The Defendant: Yes.**

(Doc. 66 at 16:25-18:3) (emphasis added).

> The Court:    You heard Ms. Olshefski outline both the minimum and maximum punishment in this case?
>
> The Defendant:  Yes.
>
> The Court:  A minimum of ten years and maximum of life, along with a fine of $10 million and lifetime supervised release.
>
> The Defendant:  Yes, Your Honor.
>
> The Court:  Now, I mentioned the Sentencing Guidelines a moment ago.  Have you and Mr. Brown talked about the Sentencing Guidelines, and first of all, that they exist and how they might apply to your case?
>
> The Defendant:  Yes, Your Honor.

(*Id.* at 18:15-19:1) (emphasis added).

> The Court:  And do you understand that after it has been determined what the guideline sentence is for your case, that the Judge assigned to your case has the authority to impose a sentence that's more severe or less severe than the sentence called for the guidelines.  Do you understand that?
>
> The Defendant:  Yes, I do, Your Honor.

(*Id.* at 19:12-17) (emphasis added).

> **The Court:  And do you understand that the sentence that I impose may very well be different from any sentence that you have discussed with Mr. Brown?**

**The Defendant:  Yes, I do.**

(*Id.* at 19:24-20:2) (emphasis added).

After a further recitation of the factual basis upon which the Defendant's guilty plea rested, the Defendant acknowledged that he was guilty of the crime to which he was pleading guilty and agreed that the Government could establish his guilt beyond a reasonable doubt had the case proceeded to trial.  (*Id.* at 23:15-24:2).  The Defendant also confirmed that he was not forced or threatened to enter into a guilty plea and that no promises were made to him other than those contained in the written plea agreement.

The Court:  Mr. Gucu, has anyone forced you, in any way, to plead guilty in this case?

The Defendant:  No, Your Honor.

The Court:  Has anyone threated you in such a way as to induce you to plead guilty?

The Defendant:  No, Your Honor.

The Court:  Does your plea result from any promises, other than the promises in the plea agreement?

The Defendant:  No, Your Honor.

(*Id.* 24:3-11).

As the change of plea transcript and plea agreement make clear, Defendant's claim about his counsel's promise of a specific sentence is belied by the record of Defendant's change of plea hearing and is contrary to Defendant's own statements at the hearing acknowledging that no promises were made to him other than those in the plea agreement.

Further, the Court held a thorough and adequate plea hearing. *See United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) ("Indeed, we have long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted.") (collecting cases). His allegations that his counsel promised him "no more than 36 to 48 months" is flatly contradicted by the record and is frivolous where, as here, Defendant admitted under oath that he was aware that the minimum sentence was ten years, that the Court was not bound by the plea agreement to impose any specific sentence, and these same terms were set forth in the written plea agreement. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). "The critical question is whether these allegations, when viewed against the record of the plea hearing, were so palpably incredible, so patently frivolous or false as to warrant summary dismissal." *Id.* at 76 (internal citation and quotation marks omitted).

Viewing Defendant's allegations against the record of the plea hearing and the plea agreement, as detailed above, Defendant's first ground for relief is patently frivolous and contradicted by the record and the Defendant's own admissions under oath. *See Shedrick*,

493 F.3d at 299 ("This case falls well within well-establish precedent: defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion."). Further, the Defendant has not alleged and cannot demonstrate that he was prejudiced by any alleged outside promise of a specific sentence since he knowingly and voluntarily pled guilty to a crime mandating a ten-year minimum term of imprisonment. Accordingly, the Court will dismiss Defendant Gucu's first ground for relief made on the basis that his counsel allegedly promised him a sentence of "no more than 36 to 48 months." (Doc. 59, at 1). Moreover, Defendant is not entitled to a hearing on this claim because his allegations are contradicted conclusively by the record and the allegations are patently frivolous. *See Solis v. United States*, 252 F.3d 289, 295 ("However, a defendant would not be entitled to a hearing if his allegations were contradicted conclusively by the record, or if the allegations were patently frivolous."); *see also Palmer*, 592 F.3d at 393 ("a court should be reluctant to convene an evidentiary hearing to explore the claims of a petitioner whose pleadings are factually insufficient to suggest any entitlement to habeas relief."); *Id.* ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.") (internal citation and quotation marks omitted).

B.    <u>Defendant Claims Counsel was Ineffective for Failing to Argue for the Acceptance of Responsibility</u>.

Defendant's second ground for relief is his claim that his counsel was ineffective by failing to argue for a sentencing reduction associated with his acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b).  In his habeas petition, the Defendant claims that his counsel was ineffective for failing to "ask for the third point." (Doc. 59, at 2).  Defendant is wrong and his arguments supporting his second ground for relief are patently frivolous, contradicted by the record, and without merit.  Indeed, Defendant admits as much in his reply brief where he states "[t]he movant in this case made a mistake when it was his contention that he did not receive one additional point for acceptance of responsibility.  His memory of his PSR was incorrect." (Doc. 72 at 1).

Defendant's base offense level was 32.  (PSR, ¶ 17).  He received a 2-point upward adjustment for possessing a firearm in connection with drug trafficking. (*Id.*, ¶ 18).  He also received a 3-point downward adjustment for acceptance of responsibility for a total offense level of 31 points. (*Id.*, ¶¶ 24-25).  Paragraph 24 and 25 of the PSR, as well as the sentencing transcript, make clear that the Defendant was awarded a 3-level point reduction for acceptance of responsibility.  (Docs. 44, 68).  The PSR states as follows:

24.    **Acceptance of Responsibility**:  The defendant has demonstrated acceptance of responsibility for the offense.  Accordingly, the offense level is decreased by two levels.  USSG § 3E1.1(a).                                                              **-2**

25.    **Acceptance of Responsibility**:  The defendant has assisted authorities in

the investigation or prosecution of the defendant's own misconduct by timely notifying

authorities of the intention to enter a plea of guilty.  Accordingly, the offense level is

decreased by one additional level.  USSG § 3E1.1(b).                              **-1**

In addition, the sentencing transcript as well as the sealed sentencing transcript makes

clear that Defendant received the 3-point reduction for acceptance of responsibility and the

Court granted the Government's Motion for Downward Departure, resulting in a sentence of

97 months which is substantially less than mandatory minimum of ten years.  (Docs. 68,

69).

## C.    Defendant Claims Counsel was Ineffective for Failing to Argue for a Minor or Minimal Role Reduction at Sentencing.

In his third and final ground for habeas relief, Defendant claim his counsel was

ineffective for failing to argue for a minor or minimal role reduction at sentencing pursuant to

U.S.S.G. § 3B1.2.  Specifically, the Defendant claims he was "simply an addicted

methamphetamine user who sold small amounts of the drug to support his habit."  (Doc. 60,

at 3).  "Section 3B1.2 affords a reduction in a defendant's offense level if the defendant was

either a minimal or minor participant."  *United States v. Brown*, 250 F.3d 811, 819 (3d Cir.

2001).  Under the applicable guidelines, "If the defendant was a minimal participant in any

criminal activity, decrease by **4 levels**."  U.S.S.G. § 3B1.2(a) (emphasis supplied).  "If the

defendant was a minor participant in the criminal activity, decrease by **2 levels**."  U.S.S.G.

3B1.2(b) (emphasis supplied).  In evaluating whether the defendant's role was minor or

minimal, district courts should consider "the nature of the defendant's relationship with the other participants, the importance of the defendants' actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *United States v. Isaza-Zapata*, 148 F.3d 236, 239 (3d Cir. 1998)

Here, the record in this case flatly contradicts Defendant's contentions and the facts he previously admitted and acknowledged under oath. These facts and Defendant's own testimony under oath establish that his counsel was not ineffective for failing to raise what would amount to a frivolous argument. And, even if counsel was ineffective, Defendant has not alleged and cannot show prejudice. The following exchanges occurred at Defendant's change of plea hearing:

> The Court: All right. Now, I'm going to turn back to Ms. Olshefski, I'm going to ask her to outline the factual basis for a plea here, outline what the evidence would be against you if this case went to trial. Here again, I'm going to ask you to listen carefully to what she says, because when she has concluded, I'm going to ask you, number one, whether her statement of the evidence is true and correct, number two, whether you disagree with any part of her statement, and number three, whether you agree the Government could prove the facts Ms. Olshefski is going to recite by competent evidence beyond a reasonable doubt if this case went to trial. Are you ready?
>
> The Defendant: Yes, sir.
>
> The Court: Ms. Olshefski.

Ms. Olshefski:  Your Honor, had this case proceeded to trial, the Government would establish the Defendant's guilt beyond a reasonable doubt by putting witnesses on the stand, both lay witnesses and law enforcement witnesses.  There would be physical evidence presented, cell phone evidence, data from cell phones, text messages, WhatsApp messages, recorded phone calls, surveillance photos, search warrants, the exercise of search warrants and the result of the search warrants, as well as scientific evidence.  And the United States would establish that on January 29, 2020, the Pennsylvania State Police initiated a traffic stop that resulted in the development of a confidential informant.  This occurred in the Hazleton area within the Middle District of Pennsylvania.  The confidential informant reported that he or she had been purchasing and could continue to purchase quantities of methamphetamine from individuals that she knew, including the Defendant Jakob Gucu.  The confidential informant reported that both the confidential informant, as well as others, had purchased a substantial amount of methamphetamine from the Defendant and identified the Defendant, as well as co-conspirators of the Defendant.  The confidential informant, thereafter, engaged in three controlled purchases directly from this Defendant's hands.  Those controlled purchases occurred on February 6, February 12 and February 17, all of 2020.  Each of the controlled purchases involved surveillance photos, physical surveillance, text messages, as well as physical evidence in the form of buy money, as well as drugs received.  On February 6, 2020, the jury would learn that a confidential informant

purchased a half an ounce of methamphetamine weighing about 14 grams directly from the Defendant for $500.    On February 12, 2020, the jury would learn that the confidential informant purchased a half an ounce of meth weighing in at about 14 grams for $600 from the Defendant.  On February 17, 2020, the jury would learn that the confidential informant purchased one ounce of methamphetamine weighing in at 28 grams for $850, directly from the Defendant.  The jury would learn that two of the controlled purchases took place inside of the Defendant's residence in Hazleton and one of the purchases occurred in the parking lot of the Laurel Mall in Hazelton.  All of the purchases were surveilled, photographed and involved text message communications and all involved confirmed tests that the controlled substance was, in fact, methamphetamine.    On February 20, 2020, the Pennsylvania State Police executed three search warrants signed by a Court of Common Pleas Judge in Luzerne County.  The warrants authorized the search of the Defendant's residence, his vehicle and the cell phone.  A jury would learn that the following items were seized from the dresser located directly next to the side of the bed where the Defendant was sleeping: One loaded Smith & Wesson handgun, one fully loaded magazine for a Smith & Wesson handgun and a target phone was seized from the residence, the target phone that was involved in the controlled purchases, a large Ziploc bag containing approximately 400 grams of methamphetamine, approximately $2233 in U.S. currency in various denominations and various drug paraphernalia, including scales, packaging

materials and multiple additional cell phones. The large bag containing the approximately 400 grams of methamphetamine proved to be, in fact, methamphetamine after a DEA analysis, as well as the forensic examination was performed on the Defendant's cell phone. It held a wealth of incriminating text messages that a jury would also learn about. The Defendant also used the WhatsApp application to communicate, and those text messages and messages involved in WhatsApp would be displayed to the jury. Your Honor, that's a summary of the evidence the Government would produce at trial.

The Court: Thank you. Mr. Gucu, did you listen to Ms. Olshefski outline what the evidence would be against you if this case went to trial?

The Defendant: Yes, sir.

The Court: Is her statement of the evidence true and correct?

The Defendant: Yes, sir.

The Court: Do you disagree with any part of her statement?

The Defendant: No, sir.

The Court: Do you agree the Government would be able to prove those facts beyond a reasonable doubt in court if this case went to trial?

The Defendant: Yes, I do, Your Honor.

(Doc. 66 at 20:3-24:2).

Based on the record and the facts alleged in the petition, the Court must also reject Defendant's third ground for habeas relief. He fails the first *Strickland* prong because he failed to demonstrate that his counsel's performance was deficient, that is, fell below an objective standard of reasonableness. Given the evidence and the state of record, it was not ineffective assistance of counsel to fail to raise a minor or minimal participation reduction where there is no support for such reduction in the record. Defendant's claim is also frivolous and flatly contradicted by the record, which demonstrate his counsel has no basis in fact or law to move for a reduction for a minor or minimal role in the drug trafficking conspiracy. The Defendant plainly trafficked in sufficient amount of methamphetamine to warrant imposition of the mandatory minimum sentence of ten years imprisonment. The 400-plus grams of methamphetamine seized from his residence on just one day was admittedly intended for further sale/distribution by the Defendant. The Defendant was an admitted drug dealer who made money by selling drugs from his residence where he resided with his wife and children. He stored drugs in his house, along with scales and various drug packaging material, and sold drug to customers and he armed himself with a loaded firearm. The Court agrees with the Government that "there was nothing minor or minimal about the defendant's criminal conduct in this case." (Doc. 70 at 29).

Courts have similarly rejected frivolous arguments that a Defendant should be entitled to habeas relief based on counsel's failure to argue for an offense level reduction for being a minor or minimal participant under U.S.S.G. § 3B1.2 where, as here, the facts

demonstrate that the Defendant was clearly not a minor or minimal participant in the drug

trafficking conspiracy. *See, e.g.*, *United States v. Williams*, 2018 WL 1783172, at *7 (M.D.

Pa. Apr. 13, 2018) ("Defendant's argument fails because Attorney Reed's alleged

shortcoming does not rise to the level of ineffective assistance, and even if it did, Defendant

cannot show the requisite prejudice."); *United States v. Linh Dai*, 2012 WL 13080989, at *2

(E.D. Pa. Jan. 9, 2012) ("Defense counsel was not ineffective for failing to raise an issue

that could not succeed."); *Bautista DeLeon v. United States*, 2005 WL 1491149, at *6

(D.N.J. June 23, 2005) ("In short, Petitioner does not establish grounds for eligibility for a

role adjustment under U.S.S.G. § 3B1.2 and [counsel's] failure to argue that issue cannot be

deemed ineffective assistance."); *United States v. Rivera*, 1995 WL 606612, at *5 (E.D. Pa.

Oct. 12, 1995) ("The record also clearly shows that Rivera's assertion that he received

ineffective assistance of counsel is without merit. . . . On the basis of the Court's review of

the trial record and the sentencing, the Court concludes that Rivera has not shown that his

counsel's conduct was unreasonable under the prevailing norms and that there is a

reasonable probability that the result of his sentencing proceedings would have been

different.").

Moreover, Defendant's counsel "cannot be deemed ineffective for failing to raise a

meritless claim" in the face of overwhelming evidence to the contrary. *Werts*, 228 F.3d at

203. In addition, Defendant is not entitled to a hearing on his third ground for relief,

because even crediting the truth of the allegations in the habeas petition, "his allegations

24

were contradicted conclusively by the record" and his "allegations were patently frivolous."

*Solis*, 252 F.3d at 295; *see also Palmer*, 592 F.3d at 393 ("However, a court should be

reluctant to convene an evidentiary hearing to explore the claims of a petitioner whose

pleadings are factually insufficient to suggest any entitlement to habeas relief."); *Id.* ("[I]f the

record refutes the applicant's factual allegations or otherwise precludes habeas relief, a

district court is not required to hold an evidentiary hearing.") (internal citation and quotation

marks omitted). Indeed, the Third Circuit has "repeatedly emphasized that bald assertions

and conclusory allegations do not afford a sufficient ground for an evidentiary hearing on a

habeas petition." *Id.* at 395 (citations omitted).

In addition, the Defendant's petition "contains no factual matter regarding

*Strickland's* prejudice prong." *Id.*  Thus, Defendant's counsel performance was not

deficient and, even if it had been, there is no reasonable probability that the outcome would

have been different but for counsel's performance. *See United States v. Domian*, 92 Fed.

App'x 913, 918 (3d Cir. 2004) ("We need not decide, however, whether the failure to

adequately argue the *Isaza-Zapata* factors and introduce evidence in support of an

adjustment for minor participation is substandard professional conduct, just as the failure

altogether to request the departure may be, because [defendant] was not prejudiced by

counsel's conduct at sentencing.  There is no reasonable probability that, but for counsel's

arguable errors, the result of the proceeding would have been different.") (citing *Strickland*,

466 U.S. at 694). Accordingly, Defendant's petition for habeas relief will be denied without an evidentiary hearing.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(2), a "certificate of appealability may issue . . .only if the applicant has made a substantial showing of the denial of a constitutional right." Here, for the reasons stated in the foregoing Memorandum Opinion, Defendant has not made a substantial showing of a denial of constitutional right. Accordingly, a certificate of appealability will not issue in any respect regarding the issues decided herein because reasonable jurists would not find this Court's resolution of Defendant's constitutional claims debatable or wrong.

## V.    CONCLUSION

For the foregoing reasons, Defendant's habeas petition will be denied without an evidentiary hearing. A separate Order follows.

Robert D. Mariani
United States District Judge

26